IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHAYD CHARLES MITCHELL,

                           Plaintiff,

  v.                                                        OPINION and ORDER

BRUCE MEYER,                                                 18-cv-311-jdp

                           Defendant.

---

Plaintiff Shayd Charles Mitchell contends that defendant Bruce Meyer sexually assaulted him several times when Mitchell was confined at Lincoln Hills School. Mitchell brings a Fourteenth Amendment claim against Meyer. Trial is set for July 11, 2022. The court will hold a final pretrial conference on June 29, 2022, at 4:00 p.m.

This order addresses the parties' motions in limine. Attached to this order are drafts of the preliminary and posttrial jury instructions, verdict, and voir dire.

**A. Mitchell's motions**

Mitchell has filed five motions in limine. Dkt. 124. His first three concern other acts of Meyer's that he wants to use to show motive for the sexual assault. The first is evidence that Meyer was disciplined for viewing and circulating inappropriate material at work in 1995 or 1996. Mitchell states that Meyer admitted in his deposition that he viewed and circulated pornography, but that deposition shows that Meyer stops short of characterizing it as pornography, instead calling it "inappropriate." Dkt. 141, at 24 (Meyer's deposition). Mitchell argues that "Meyer's viewing of pornography at work is therefore evidence of one of his motives: it shows that he intended to gratify himself at work because he allowed himself to become aroused at work." Dkt. 124, at 1. I will deny Mitchell's motion and bar this evidence

because the incident—from years before Mitchell was at Lincon Hills—does not plausibly tend to show Meyer's motive to sexually assault Mitchell. Rather, it is classic propensity evidence that is disallowed under Rule 404.

Mitchell's second motion is to allow evidence that Meyer sexually harassed a coworker, arguing that the evidence would show that "Meyer was motivated to sexually denigrate others while at work." Dkt. 124, at 2. Mitchell does not explain what this evidence is, when it is from, or whether Meyer was ultimately found to have sexually harassed the coworker. And at his deposition Meyer denies ever having been investigated for sexual harassment. In any event, there is no indication that this incident has anything to do with the events of the case, nor is the alleged sexual harassment similar enough to the sexual assaults at issue here to suggest that it would be helpful in proving motive, as opposed to merely showing that Meyer had committed misconduct in the past. I will deny Mitchell's motion to allow this evidence.

Mitchell's third motion is to allow evidence that Meyer made inappropriate remarks to Mitchell about what Mitchell calls his "then-homosexuality." *Id.* More specifically, Meyer "made a comment that it was fitting that a rainbow was painted over Mitchell's cottage, implying that it was fitting because Mitchell is homosexual. When Mitchell confronted Meyer about the comment, Meyer told Mitchell, 'You are still a fucking fairy, so fly back to your room and shrug it off.'" *Id.* (quoting Dkt. 68, ¶¶ 213–14 (Mitchell's affidavit)). Mitchell argues that these comments are "evidence of one of [Meyer's] motives: it shows that he assaulted Mitchell because he looked down on Mitchell for being a homosexual." *Id.*

Meyer objects to this evidence for multiple reasons, including that I have already concluded (in dismissing failure-to-protect claims against supervisory officials) that Meyer's harassing comments were not plausibly connected to a threat of violence, that verbal

2

harassment generally doesn't violate the Constitution, and that I did not "take Mitchell to be saying that Meyer sexually assaulted him because he is gay." *See* Dkt. 78, at 15, 23. Meyer also argues that because Mitchell's claim falls under the Fourteenth Amendment's "objective unreasonableness" standard, the jury may not consider Meyer's subjective motive or intent, and that use of this other-acts evidence would confuse the jury or prejudice Meyer.

I will reject each of these arguments and I will grant Mitchell's motion in limine to allow use of this evidence. Regardless of my previous rulings on other claims originally brought by Mitchell, at trial he is allowed to develop a theory of the case to prove that Meyer sexually assaulted him. Evidence about verbal harassment wasn't enough to sustain a failure-to-protect claim against supervisory officials alerted to the harassment, but that doesn't mean that Mitchell should be prohibited from arguing that the sexual assaults were the culmination of Meyer's previous bullying. The parties' previous interactions are relevant information informing the jury about Meyer's motive for the alleged assaults. Any risk of confusion or prejudice can be cured by an instruction that Mitchell's Fourteenth Amendment claim is limited to the sexual assaults themselves, not verbal harassment.

Another word about Meyer's state of mind. Meyer argues that because the Fourteenth Amendment standard is "objective reasonableness," his subjective state of mind is irrelevant. That is incorrect. Supreme Court and Seventh Circuit cases grappling with the question of an objective versus a subjective standard in Fourteenth Amendment cases ordinarily concern events in which the parties agree (at least at an abstract level) that the plaintiff and defendants actually had the interactions that formed the basis for the claims. For instance, in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the jail excessive force case establishing the objective-reasonableness standard for Fourteenth Amendment cases, it was undisputed that the

3

defendant deputies used *some* amount of force; the question before the Court was whether the jury should consider whether the force was appropriate from an objective standpoint or from the subjective standpoint of the individual defendants.

This case is different; the key remaining issue is whether the assaults happened at all. Meyer's state of mind regarding his intent or motive is fair game because Mitchell won't be using that evidence to prove the reasonableness of Meyer's actions; he will use the evidence to prove that Meyer actually assaulted him. And in any event, if the alleged sexual assaults actually occurred, they would be objectively unreasonable. The applicable standard is not the issue. I will take the parties' input on this issue at the final pretrial conference.

Meyer does not object to Mitchell's fourth motion, to preclude Meyer from referring to the jury as taxpayers. That motion is granted.

Fifth, Mitchell asks to bar Meyer from offering any character evidence or evidence of crimes, wrongs, or other acts without a prior ruling allowing it. Federal Rule of Evidence 404 will apply to such evidence and the rule generally requires prior disclosure. Meyer says that he should be allowed to impeach Mitchell with his felony convictions for (1) using a computer to facilitate a sex crime and (2) child enticement—sexual contact. Under Rule 609, felony convictions may be used to attack a witness's character for truthfulness or untruthfulness. In civil cases, felony convictions less than 10 years old "must be admitted, subject to Rule 403." Fed. R. Evid. 609 (a)(1)(A). Rule 403 provides that the court "may" exclude relevant evidence if its probative value is "substantially outweighed" by the danger of unfair prejudice. The Court of Appeals for the Seventh Circuit has held that it is "appropriate to reveal the title, date, and disposition of the offense" used for impeachment under Fed. R. Evid. 609(a). *United States v. Lewis*, 641 F. 3d 773, 783 (7th Cir. 2011). I will allow Meyer to present these convictions in

4

some form—at least the number of times he has been convicted of a felony. At the final pretrial conference, I'll take argument on whether allowing the titles of the convictions would unfairly prejudice Mitchell.

## B. Meyer's motions

Meyer has filed nine motions in limine (Dkts. 113–121). Mitchell does not object to Meyer's motions barring Mitchell from eliciting testimony from Meyer about his Fifth Amendment rights, offering hearsay from news reports, making a "golden rule" argument, or discussing Meyer's indemnification. I will grant those motions. Nor does Mitchell object to Meyer's motion to sequester non-party witnesses. I will grant that motion.

That leaves Meyer's first, seventh, eighth, and ninth motions.

In his first motion, Meyer asks to preclude any evidence or argument regarding damages because Mitchell did not provide an initial disclosure regarding the computation of each category of damages under Federal Rule of Civil Procedure 26(a)(1)(A)(iii). Dkt. 113. At the time, Mitchell wasn't required to submit this initial disclosure because actions brought by pro se prisoners are exempted from the initial-disclosure requirement. *See* Rule 26(a)(1)(B)(iv). Mitchell now has counsel, but Meyer does not cite any authority for the proposition that the initial-disclosure rule is triggered upon appearance of counsel for a pro se party. In any event, Mitchell appears to be seeking compensatory damages for pain and suffering and also punitive damages, categories of damages that are not readily amenable to calculation in a methodical way. Mitchell states that he "does not object to an order preventing him from admitting a computation." Dkt. 136, at 1. If this is what Meyer seeks then Mitchell has conceded the point. But I will otherwise deny Meyer's motion, and Mitchell will be free to argue for compensatory damages for pain and suffering and for punitive damages. One complication is that Mitchell's

5

proposed jury instructions on compensatory damages includes a discussion of medical expenses. If Mitchell is seeking this type of damages, then we will discuss this motion in limine further at the final pretrial conference.

In his seventh motion, Meyer asks to preclude evidence or argument concerning any of the claims that were dismissed earlier in the case, particularly about the "red shirt program" at Lincoln Hills. Dkt. 119. Mitchell alleged that defendants disciplined detainees involved in homosexual activity by forcing them to wear red shirts; I granted summary judgment to defendants on Mitchell's Fourteenth Amendment infliction-of-humiliation claims regarding the program on qualified immunity grounds. Dkt. 78, at 18–19. Mitchell states that he "will not introduce evidence of the fact that he made other claims in this case, if Meyer does not open the door to it." Dkt. 136, at 3. And in particular he states that there will be no need to bring up the red shirt program if Meyer testifies consistent with his deposition, in which he stated that he knew that Mitchell was gay. But he adds that "any underlying fact mentioned in the other claims should be admissible if it's relevant." *Id.*

I will grant Meyer's seventh motion as to the fact of Mitchell having brought other claims; the existence of those claims is irrelevant to this trial. But I have already discussed how Meyer's intent and motive are appropriate issues to cover at trial. If there are facts previously raised regarding Mitchell's other claims that are relevant to Meyer's motive or intent on the sexual-assault claim, Mitchell may raise them and Meyer remains free to object.

Meyer's eighth motion is to preclude evidence or argument regarding his previous bad acts. Dkt. 120. Meyer does not discuss particular prior acts, so there isn't anything specific for me to rule on. In any event, I've already discussed this issue in addressing Mitchell's motions in limine.

Meyer's ninth motion is to preclude any reference to the consent decree under which Lincoln Hills has been operating since October 2018, *see* Case No. 17-cv-47, Dkt. 107, or any reference more generally to "troubles" at the facility. Mitchell does not object to statements about the consent decree itself, so I will grant that portion of Meyer's motion. But Mitchell does object about more general references to problems at Lincoln Hills, stating that such a reference might be necessary for Mitchell to explain why he first complained about the assaults years after they occurred. In his deposition, Mitchell stated:

> Q. After the fourth incident, did you tell anybody about that incident, either youth or youth counselors?
>
> A. Not while I was in Lincoln Hills. No.
>
> Q. Did you tell people outside of Lincoln Hills?
>
> A. Much later. Yes.
>
> Q. Okay. So let's say between 2004 and 2012, did you tell anyone about these incidents?
>
> A. No.
>
> Q. Okay. When is the first time you told someone else about this?
>
> A. 2017.
>
> Q. And who did you speak to?
>
> A. Dr. Wanda and Red Granite Correctional Institution PTSD treatment team.
>
> Q. Do you know what prompted you to first speak about it?
>
> A. The media. The media attention of Lincoln Hills being in the news, and the talks about the abuses. That's really what triggered me.

Dkt. 142, at 80–81.

Mitchell argues, "If Meyer claims that Mitchell remembering the sexual assault is not credible, Mitchell must be able to tell the jury what triggered his memory." Dkt. 136, at 5. Generally, references to "troubles" at Lincoln Hills are irrelevant to Mitchell's claim and could prejudice Meyer. But Mitchell gives a persuasive reason for allowing this testimony if Meyer first questions his credibility regarding Mitchell later remembering the sexual assaults or his delaying reporting until years later. So I am inclined to deny Meyer's motion if Mitchell seeks to use the evidence only to rebut this type of attack on his credibility. I will take additional input on this motion at the final pretrial conference.

Entered June 28, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge